UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JESSICA MARIE MORALES O/B/O J.D.S. JR.,

                                Plaintiff,

-vs-                                DECISION AND ORDER

ANDREW M. SAUL, Commissioner of Social Security,[1]                    18-CV-6051-CJS

                                Defendant.

---

## INTRODUCTION

**Siragusa, J.** This Title XVI Social Security appeal on behalf of a child under age 18 is before the Court to review the final decision by the Commissioner. The parties have made cross motions for judgment on the pleadings. For the reasons stated below, the Court affirms the Commissioner's decision.

## PROCEDURAL BACKGROUND

Plaintiff filed for benefits for her child ("J.D.S.") on December 14, 2014, alleging that her child's disability began on January 1, 2012. The Social Security Administration denied her claim initially, and she appeared via videoconference for a hearing before an administrative law judge ("ALJ"), who presided from Alexandria, Virginia. Plaintiff appeared *pro se*. The ALJ issued a decision on February 7, 2017, finding that Plaintiff's child was not disabled. Plaintiff appealed to the Social Security Administration's Appeals Council and that body denied her request for review on November 20, 2017, making the ALJ's decision the Commissioner's final decision. Plaintiff filed this lawsuit on January 18, 2018.

---

[1]The president nominated Andrew M. Saul to be Commissioner of Social Security and the Senate confirmed his appointment on June 4, 2019, vote number 133. He is substituted pursuant to Fed. R. Civ. P. 25(d). The Clerk is directed to amend the caption to comply with this substitution.

## STANDARD OF REVIEW

Title 42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Section 405(g) provides that the District Court "shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2007). It directs that when considering a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Metro. Stevedore Co. v. Rambo*, 521 U.S. 121, 149 (1997).

To determine whether substantial evidence supports the Commissioner's findings, the Court must "examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curium)). Section 405(g) limits the scope of the Court's review to two inquiries: whether the Commissioner's findings were supported by substantial evidence in the record, and whether the Commissioner's conclusions are based upon an erroneous legal standard. *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003); *see also Mongeur*, 722 F.2d at 1038 (finding a reviewing court does not try a benefits case *de novo*).

## DISCUSSION

During the hearing, Plaintiff testified that J.D.S. "goes to a resource room for English and language three times a week for 30 minutes, speech and language therapy, small group, for three times a week 30 minutes." R. 45. A report from Deanna Calvert, M.S. Ed., Special Education Itinerant Teacher at School No. 5, sent on March 12, 2015, R. 130, states that

although J.D.S. "demonstrated a significant discrepancy in his performance on the verbal and non-verbal tasks," he "remains attentive to tasks," and "is able to follow rules in a game." R. 132. The report also states that J.D.S. was observed "interacting with his peers in a cooperative play" and "although not resistant to following directions, he sometimes has difficulty understanding them." R. 132. It also notes that he "is frequently absent[2] and would benefit from attending school regularly to gain experience and exposure to build strong peer relationships." R. 132–33. Comments on his adaptive abilities noted he can take care of his own belongings, toileting, and clean up after lunch, needing only verbal reminders. R. 133. The report notes no physical development problems but has frequent ear infections. Under "Strengths," the report states "[J.D.S.] is a happy boy. He enjoys engaging in activities presented to him and is eager to try hard. He engages with his peers both in the classroom and on the playground. He follows school and classroom rules." R. 133. Under the title, "Needs," the report states the following:

> [J.D.S.] needs to increase his receptive and expressive language skills. He needs to increase his ability to follow 1–2 step directions related to his classroom routine and during both large and small group teacher directed tasks. He will benefit from both visual and verbal cueing to support him in the classroom. He needs continued exposure to opportunities to engage with his peers and may need support to facilitate expressing his ideas and to understand his peers['] directives. ideas and to understand his peer's directives.

R. 133.

A Tier II Behavior Intervention dated May 15, 2014, is also in the Record. R. 136. It identified the behavior being addressed as; "[J.D.S.] is very active, unfocused, impulsive, distractible and cannot maintain any task completion. After about 5 minutes he begins engaging in self stimulation behavior such as rolling around on the floor." R. 136.

---

[2] A report in the Record, R. 135, indicates that from September 4, 2013, to January 23, 2014, he was absent 21 out of 85 days (almost 25%). A year 2014–2015 report shows absences totaling 44 days. R. 386.

3

For children between the ages of three and eighteen such as J.D.S., the Commissioner will evaluate their development in the domains of: acquiring and using information; attending and completing tasks; interacting and relating with others; moving about and manipulating objects; caring for yourself; and, health and physical well-being. 20 CFR 416.926a(b)(1)(i)–(vii) (Lexis Advance through the June 17, 2019 issue of the Federal Register. Title 3 is current through June 7, 2019). If a child has extreme limitations in *one* area, or marked limitation in *two* areas of functioning, the Commissioner will find that the child's impairment is functionally equivalent in severity to a listed impairment. 20 C.F.R. § 416.926a(d) (Lexis Advance through the June 17, 2019 issue of the Federal Register. Title 3 is current through June 7, 2019). The ALJ determined that J.D.S. had either less than marked limitations, or no limitations, in any of the functional areas.

Plaintiff contends that the ALJ failed in his duty to develop the Record and improperly evaluated Plaintiff's and eight-year-old-J.D.S.'s credibility. Regarding the Record, Plaintiff states that it lacked treatment notes from J.D.S.'s otolaryngologist, contained only one report regarding his sleep apnea, and only a handful of reports from his primary care physician, who was treating him for attention deficit hyperactivity disorder, restless leg syndrome, and asthma. Pl.'s Mem. of Law 16, Oct. 29, 2018, ECF No. 12-1. Further, Plaintiff points out that the Record lacks,

> any grade, behavior, or progress reports for the 2015–2016 and 2016–2017 school years, any education records explaining the increase in special education services in the middle of the 2015–2016 academic year, or any records from the new school J.D.S. started attending around the time of his hearing.

*Id*.

The ALJ's duty to develop the record arises "when there are gaps in the record, or when the record serves as an inadequate basis on which to render a decision." *Walker v. Astrue*, No. 11-CV-766S, 2012 U.S. Dist. LEXIS 138472, at *9 (W.D.N.Y. Sep. 25, 2012).

> If the child is in school, the ALJ should ask for "any reports that the school may have…that describe any special education instruction or services." 20 C.F.R. § 416.924a(a)(2)(iii). Reasonable efforts can include requesting the pertinent medical records. *See Drake v. Astrue*, 443 Fed. Appx. 653, 656 (2d Cir. 2011); *see also* 20 C.F.R. § 416.912(d)(1). The failure to make reasonable efforts to obtain updated school records is cause for remand. *Cespedes v. Barnhart*, No. 00-CV-7276-GEL, 2002 WL 1359728 at *4–5 (S.D.N.Y. June 21, 2002) (ALJ is required to make reasonable efforts to obtain updated school records, especially when the plaintiff is appearing pro se, and failure to do so is cause for remand); *see also McClain v. Apfel*, No. 99 Civ. 3236 VM JCF, 2001 WL 66403 at *9–10 (S.D.N.Y. Jan. 26 2001) (ALJ failed to update records which led to him relying on information from when the child was four years old even though the opinion issued when the child was 8 which was cause for remand).

*Love v. Colvin*, No. 15-CV-00673-HBS, 2016 WL 4086948, at *4 (W.D.N.Y. Aug. 2, 2016).

The Commissioner argues that Plaintiff does not challenge the ALJ's domain findings. Comm'r Mem. of Law 12, Feb. 27, 2019, ECF No. 17-1. The Commissioner contends that the ALJ was given the most up-to-date school records: "Plaintiff informed that [sic] ALJ that she submitted some school year records from November/December 2015, which the ALJ added to the file (Tr. 48). She explained that these were the most up-to-date records and assured the ALJ that 'most everything' was in the paperwork already submitted (Tr. 49)." Comm'r Mem. of Law 15.

The hearing took place on October 14, 2016, about one month into the 2016–17 school year. R. 40. The education records cover May 2013, and February 2015. R. 130, 169. Exhibit 7F lists "claimant-supplied evidence dated 10/22/20-15 to 6/23/16…." The progress J.D.S. made up to November 6, 2015, is reported, but the report is unhelpful. For example, it reports that J.D.S.'s "first session of speech-language therapy with this clinician was on October 20, 2015. Thus, student progress in relation to this goal [asking and answering varied "wh" questions] cannot be reliably judged at this time by this therapist." R. 373.

The Record also contains a report by Miriam Polatoff, TSSLD[3], dated May 10, 2016. R. 378. One recommendation in that report is that J.D.S. be referred to an audiologist for follow-

---

[3] Teacher of Students with Speech-Language Disabilities, http://www.op.nysed.gov/prof/slpa/speechcredential.htm, last referenced on June 21, 2019.

up testing, since his hearing test identified deficiencies. R. 379. His articulation score of 87 showed that he was "within the low and normal of limits." R. 380. A language fundamentals test showed borderline normal results in all but "word structure," where he showed a mild delay. R. 380. Overall, he showed mildly delayed ranges on his ability to hear and relate a story. R. 381–82. The report summarizes J.D.S.'s response to intervention as follows:

> **Response to Intervention:**
>
> For this past second quarter, [J.D.S.] was reported to be progressing satisfactorily towards all three of his speech-language therapy goals. For the second quarter speech-language progress notes, this clinician's comments included the following:
>
> - [J.D.S.] attention and behavior varies during and between therapy sessions. His level of focus affects how well he does at therapy tasks.
>
> - [J.D.S.] will at times demonstrate impulsiveness and lack of self-control during therapy sessions such as saying a response out loud when is not supposed to; however, in this clinician's judgement this is mainly attributable to behavioral issues and not lack of ability.

R. 382. The May 2016 report indicates that J.D.S. was given an updated psychological test, and the results were in his "cumulative folder." R. 383. Ms. Polatoff's recommendation was that J.D.S.'s speech therapy sessions be reduced to two times per week for thirty minutes each, and she further recommended that he no longer needed IEP-Level service. R. 383–84. She recommended that J.D.S.'s "classroom teacher and speech-language therapist can determine whether ERSS speech-language services would be warranted for the subsequent school year." R. 384.

A psychological evaluation on November 18–19, 2015, by school psychologist Helen Boehm-Morelli, PsyD, NCSP, is in the record. R. 387. Her conclusion was:

> In conclusion, [J.D.S.] has average cognitive potential with academic achievement about one year below expectancy. He continues to have difficulty organizing his thoughts and then expressing them in a logical manner. He also is diagnosed with ADHD and despite medical intervention continues to have difficulty with hyperactivity and distractibility. However, according to assessment results, [J.D.S.] no longer qualifies for speech/language therapy. It is suggested that his classification be changed to a student with an Other Health Impairment and that he continue to receive resource room support.

R. 389. Thus, in contrast to Plaintiff's contention, that the Record did not contain any school reports from 2015–2016 or 2016–2017, the only time frame missing any information is 2016–2017. Since the hearing took place in October 2016, it is unlikely that any useful records for the 2016–2017 school year would have been generated by that time. Although Plaintiff states that J.D.S. received an increase in special education services in the middle of the 2015–2016 academic year, the Court has found no such reference. In fact, as pointed out above, the reports from May 2016 and November 2015 indicate the contrary. After its review of the Record, the Court finds that the ALJ's decision that J.D.S. is not disabled is supported by substantial evidence and that the Record does not have significant gaps that unduly influenced the ALJ's decision.

## CONCLUSION

Plaintiff's motion for judgment on the pleadings, [ECF No. 12](ECF No. 12), is denied, and the Commissioner's cross-motion, [ECF No. 17](ECF No. 17), is granted. The Clerk is directed to enter judgment and close this case.

IT IS SO ORDERED.

DATE: June 21, 2019  /s/ Charles J. Siragusa
       Rochester, New York  CHARLES J. SIRAGUSA
                                         United States District Judge